[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13951

_____

D.C. Docket No. 1:13-cr-00001-MW-GRJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWN EMMANUEL CASTOR,
a.k.a. SHAWN EMANUEL CASTOR,
a.k.a. SHAWN E. CASTOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 3, 2015)

Before ED CARNES, Chief Judge, DUBINA and GILMAN,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Appellant Shawn Castor appeals his convictions for: (1) possession with intent to distribute cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C)-(D); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e).  On appeal, he argues that the district court erred in denying his motion to suppress his statements and physical evidence seized from his residence.  He contends that: (1) prior to reading him his *Miranda*[1] rights, Detective Fred Melaragno of the Gainesville (Fla.) Police Department repeatedly told him that he could keep Castor out of jail if he cooperated; (2) Melaragno told him after reading him his rights that he could not charge Castor with any additional drugs; and (3) after he admitted that he had hidden additional marijuana, officers searched his home pursuant to a search warrant and seized marijuana, cocaine, and a firearm.  Castor concedes that he was in custody and waived his *Miranda* rights, but he contends that his confession was involuntary and that due process compels the suppression of the evidence derived from it.

In reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and the application of law to those facts *de novo*.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

2

*United States v. Capers*, 708 F.3d 1286, 1295 (11th Cir. 2013).  We construe the facts in the light most favorable to the prevailing party.  *Id.* at 1295-96.

We conduct a two-part inquiry when determining the admissibility of a post-arrest statement.  *United States v. Bernal-Benitez*, 594 F.3d 1303, 1317-18 (11th Cir. 2010).  First, we decide whether the law enforcement officer complied with *Miranda*.  *Id.* at 1318.  If so, we determine whether the confession was voluntary.  *Id.*

*Miranda* protects a defendant's Fifth Amendment right against self-incrimination by requiring that law enforcement officers advise the person subject to custodial interrogation of certain rights and to respect the person's invocation of those rights.  A defendant may waive his *Miranda* rights if the waiver is made voluntarily, knowingly, and intelligently.  Voluntariness requires that the waiver must be the result of a free and deliberate choice rather than intimidation, deception, or coercion. The waiver must be made with full awareness of the nature of the rights being waived and the consequences of that decision.   A court may conclude that a person waived his *Miranda* rights only if the totality of the circumstances demonstrates both a free choice and the requisite level of comprehension.  The government must prove that a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights by a preponderance of the evidence.  *Id.*

In *United States v. Lall*, 607 F.3d 1277 (11th Cir. 2010), the defendant, Lance Lall, challenged the denial of his motion to suppress evidence on the grounds that his incriminating statements were made involuntarily and physical evidence from his bedroom was seized pursuant to his admissions. Detectives from the North Miami Police Department responded to an emergency call regarding an armed robbery at Lall's residence. One of Lall's siblings told detectives that the robbers were looking for Lall because Lall was involved with credit card fraud. When Lall returned home, a detective informed him of his *Miranda* rights. Detective Michael Gaudio took Lall to Lall's bedroom with two or three other officers to try to collect any evidence that might help the police find the robbers, but Gaudio refused to allow Lall's family to enter the bedroom. Gaudio assured Lall and his family that any information Lall shared would not be used to prosecute him. Lall then identified the equipment that he used to commit identity theft, and the detective seized this evidence from Lall's bedroom. Although Gaudio did not arrest Lall, he alerted the Secret Service. Several days later, Gaudio told Lall to come to the police station with his father, and again assured him that he "wasn't going to be charging him with any of this." Gaudio re-read Lall his *Miranda* warnings, and Lall gave another statement. The Secret Service arrested Lall. The district court denied Lall's motion to suppress. *Id.* at 1280-82.

Lall argued that Gaudio's promises of nonprosecution undermined the *Miranda* warnings that he had been given. Conversely, the government contended that Lall was not in custody in his bedroom, and his confession was voluntary. *Id.* at 1282-83. We first evaluated whether Lall's *Miranda* waiver was voluntary. *Id.* at 1283. We examined *Hart v. Attorney General of Florida*, 323 F.3d 884 (11th Cir. 2003), where an officer's statement to a suspect that "honesty wouldn't hurt him" contradicted the *Miranda* warning that "anything you say can be used against you in court." *Lall*, 607 F.3d at 1283. The officer in *Hart* thus misled the suspect regarding the consequences of relinquishing his right to remain silent. We explained that Hart's decision to waive his rights and confess was the product of the officer's deception, and Hart did not truly understand the nature of his right against self-incrimination or the consequences of waiving it. Therefore, Hart's waiver was not voluntary, knowing, and intelligent. In *Lall*, we held that Gaudio's statement, that he would not pursue charges against Lall, also contradicted the *Miranda* warning that anything Lall said could be used against him. *Id.* at 1283-84. Accordingly, *Hart* compelled us to conclude that Lall "did not truly understand the nature of his right against self-incrimination or the consequences that would result from waiving it." *Id.* at 1284 (quoting *Hart*, 323 F.3d at 895) (internal quotation marks omitted). We explained that, under the totality of the circumstances, including that Lall was kept from his family during questioning and

told that the investigation related to the armed robbery, Lall's waiver of his

*Miranda* rights was not knowing, voluntary, and intelligent.  *Id.*

Second, we observed that, even if Lall was not in custody and *Miranda* was

not required, we were required to determine the voluntariness of his confession

pursuant to the Due Process Clause.  We thus examined whether Gaudio's

deception rendered Lall's confession involuntary under the totality of the

circumstances.  *Id.* at 1285-86.  Gaudio's misrepresentation—that anything Lall

said would not be used to prosecute him—was one of law, and an officer's

misrepresentations of law "are much more likely to render" a defendant's

confession involuntary.  *Id.* at 1285.  In fact, a law enforcement officer's promise

not to use a suspect's incriminating statement "may be the most significant factor

in assessing the voluntariness of an accused's confession in light of the totality of

the circumstances."  *Id.* at 1286 (quoting *United States v. Walton*, 10 F.3d 1024,

1030 (3d Cir. 1993)).  And an involuntary confession is "inadmissible in a *federal*

prosecution even if it was improperly coerced by *state* law enforcement officers."

*Id.* at 1287 (emphasis added).  We explained:

> It is inconceivable that Lall, an uncounseled twenty-year-old,
> understood at the time that a promise by Gaudio that he was not going
> to pursue any charges did not preclude the use of the confession in a
> federal prosecution.  Indeed, it is utterly unreasonable to expect any
> uncounseled layperson, especially someone in Lall's position, to so
> parse Gaudio's words.  On the contrary, the only plausible
> interpretation of Gaudio's representations, semantic technicalities
> aside, was that the information Lall provided would not be used

6

against him by Gaudio or anyone else.  Under these circumstances, Gaudio's statements were sufficient to render Lall's confession involuntary and undermine completely the prophylactic effect of the *Miranda* warnings Gaudio previously administered.

*Id.*

We then held that the physical evidence could not have been obtained without the confession; thus, the Due Process Clause compelled the suppression of the physical evidence as "the fruit of the coerced confession."  *Id.* at 1291.

Here, Castor's waiver and subsequent admissions were not voluntary. Although the government argues that his statements were voluntary under the totality of the circumstances, it does not address Melaragno's statements that he could not charge Castor for additional drugs.  The government correctly points out several facts indicating that Castor's statements were voluntary: (1) detectives read Castor his *Miranda* warnings twice; (2) Castor appeared willing to cooperate by asking if a detective would be waiting to speak to him at the police station; (3) Castor acknowledged that he had not cooperated before, but circumstances were different now; (4) the interview began around 7:00 p.m. and was not lengthy; (5) Castor was not handcuffed; (6) detectives did not physically threaten Castor; (7) only two detectives were present during the interview; (8) Castor was an adult and was not intoxicated; (9) Castor was familiar with the criminal justice system; and (10) detectives told Castor that they could not promise him anything in

exchange for his statement.[2]  However, when evaluating the totality of the circumstances, a law enforcement officer's promise not to use a suspect's incriminating statements "may be the most significant factor in assessing the voluntariness" of a confession.  *Id*.  As in *Lall*, an uncounseled layperson such as Castor would reasonably interpret Melaragno's assurances to mean that the information Castor ultimately provided would not be used against him by Melaragno or anyone else.  *See id.* at 1287.  Thus, Melaragno misled Castor regarding the consequences of relinquishing his right to remain silent when he assured him that he could not charge him with any other drugs.  Therefore, Castor's decision to waive his rights and confess was the product of Melaragno's deception, and Castor did not truly understand the nature of his right against self-incrimination or the consequences of waiving it.  *See id.* at 1283-84. Accordingly, Castor's waiver was not voluntary, knowing, and intelligent, and thus violated *Miranda*.  Moreover, the physical evidence seized from Castor's residence could not have been obtained without the confession.  It should therefore have been suppressed as "the fruit of the coerced confession."  *See id.* at 1291.

---

[2]  Although Melaragno told Castor that "[a]t no point in time will I promise you anything," he made that statement while discussing whether he could keep Castor out of jail, and it does not appear to relate to his four statements that he could not charge Castor with additional drugs.

For the aforementioned reasons, we reverse the district court's order denying Castor's motion to suppress, vacate Castor's convictions, and remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED in part, VACATED AND REMANDED in part.**[3]

---

[3] Castor's motion to file a reply brief out of time is GRANTED.